

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 12-30056-RAL |
| Plaintiff, | * | |
| | * | OPINION AND ORDER |
| vs. | * | ADOPTING REPORT AND |
| | * | RECOMMENDATION AND |
| BARRY ALLMAN, | * | DENYING MOTION TO |
| | * | SUPPRESS |
| Defendant. | * | |

## I. INTRODUCTION

This case originated with an altercation on the Rosebud Sioux Tribe Reservation, during which two people were shot. Defendant Barry Allman fled the locale in a vehicle after the shots were fired. The vehicle was stopped and Allman made statements to tribal and federal law enforcement agents on different occasions. Officers searched the vehicle.

An indictment was filed, charging Allman with assault with a dangerous weapon, assault resulting in serious bodily injury, and discharging, brandishing, carrying, or possessing a firearm during and in relation to a crime of violence. Doc. 9. A superseding indictment added a charge against Allman of convicted domestic violence offender in possession of a firearm. Doc. 36. Allman moved to suppress the statements made to tribal police officers and the FBI and to suppress evidence seized from the vehicle search. Doc. 27. After the parties fully briefed the motion, Magistrate Judge Mark A. Moreno held a hearing on the motion on June 13, 2012. On June 29, 2012, Judge Moreno issued a Report and Recommendation, recommending that Allman's motion to suppress be denied. Doc. 34.

Copies of the Report and Recommendation were served upon the parties as required by 28

U.S.C. § 636, and Allman filed objections to the Report and Recommendation. Doc. 35. In considering a magistrate judge's recommendation on a motion to suppress evidence, a district court must make a "de novo determination of those portions of the report or . . . recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This Court has conducted a de novo review of the record. For the reasons explained below, this Court adopts the Report and Recommendation.

## II. FACTS[1]

On May 3, 2012, there was a shooting in Parmalee, South Dakota. T. 5. Soon after the shooting, officers began looking for a vehicle seen leaving the scene, described as a white Alero. T. 6. Special Agent Mark Kettell went to Upper Cut Meat, South Dakota after a report that the vehicle was there. Id. On his way to Upper Cut Meat, Special Agent Kettell met a white Pontiac traveling at a high rate of speed that ran off the road into a ditch before returning to the road. T. 7; T. 34-35. Special Agent Kettell pulled the vehicle over. When the vehicle stopped, Allman walked away from the car while two other men ran away from the car. Id. Another patrol car with Speical Agent Robert Sedlmajor arrived at the scene as well.

Special Agent Kettell got out of his vehicle, pointed his sidearm at Allman, and instructed Allman to put his hands up. T. 8. Allman was complying with these orders when a gunshot sounded within a nearby patrol car as Special Agent Sedlmajer accidentally discharged his weapon in his car. T. 8-9. Allman dropped to the ground upon hearing the gunshot. T. 9. Special Agent Kettell, along with another officer, then placed Allman in handcuffs and led him toward a vehicle. Id. According to Special Agent Kettell, Allman then began stating that he had

---

[1]Any references to the suppression hearing transcript will be "T" followed by the page number or numbers.

thrown the gun out of the car window by a tree. T. 9; T. 20-21. Special Agent Kettell informed Allman that the agents were going to put the handcuffs on properly and then give Allman his Miranda rights. T. 10. Special Agent Kettell testified that he told Allman to stop during the statement because of a lack of Miranda warnings. T. 37.

Special Agent Kettell then placed Allman under arrest for aggravated assault and gave Allman the full Miranda warning. T. 10; T. 14; Miranda v. Arizona, 384 U.S. 436 (1966). Once given the Miranda warning, Allman told Special Agent Kettell that he had thrown the gun out a car window on a dirt road by a big tree. Id. Special Agent Kettell testified that he had no reason to believe that Allman had actually thrown the gun at that time. T. 9; T. 22. Allman refused to disclose the location of the gun and refused to guide the agents to the gun; thereafter, Special Agent Kettell searched the vehicle to see if the gun was still in it. T. 11. Special Agent Kettell initially looked into the vehicle and could see two unfired nine-millimeter bullets inside the vehicle. T. 14. Special Agent Kettell then searched the vehicle, but did not find a gun. T. 14. Special Agent Kettell did not receive consent to search the car, nor did he have a warrant. T. 22. At the time of the search, Special Agent Kettell did not know whether Allman was the driver or the owner of the car. T. 36. The initial search was limited to looking for a weapon. T. 33. The next day, Special Agent Kettell received consent from Kelly Whirlwind Soldier, the car's registered owner, to search the car for any evidence. T. 33; T. 39.

Allman likely was intoxicated during the events. After his arrest, around 2:00 am on May 4, 2012, Allman registered a .062 on a preliminary breath test. Ex. 7. Beginning around 2:26 a.m. on May 4, 2012, Special Agent Meghan Breining and Special Agent Kettell interviewed Allman at the Rosebud Sioux Tribe Law Enforcement Center about the altercation as a whole.

T. 46; T. 59. Special Agent Breining informed Allman of his <u>Miranda</u> rights by going through the FBI's advice of rights form with him. T. 47. The interview lasted approximately thirty-four minutes. T. 49; T. 52.

Special Agent Breining, along with Speical Agent Kettell, interviewed Allman a second time on May 4, 2012, beginning around 1:35 p.m because a weapon had been found since the first interview. T. 66. Again, Special Agent Breining informed Allman of his <u>Miranda</u> rights using the FBI's advice of rights form. T. 54. At the end of this interview, Allman asked whether he would be able to meet with an attorney prior to any additional interviews with law enforcement agents. T. 58. Special Agent Breining advised Allman that he would be able to meet with an attorney and ended the interview. T. 58; T. 64. Nothing incriminating or inculpatory was said by Allman after he made the statement about accessing a lawyer. T. 64.

## III. DISCUSSION

Allman filed four specific objections to Judge Moreno's Report and Recommendation. These objections are addressed in turn.

### A. Initial Pre-<u>Miranda</u> Statement About the Gun

Allman objects to the Judge Moreno's finding and recommendation that the initial statement by Allman to Special Agent Kettell was voluntary and not a product of police questioning. Allman objects both to the factual and legal conclusions of Judge Moreno's recommendation. Essentially, the defense "asserts that Agent Kettell initially asked Defendant a question about where the gun was, before Defendant told Kettel that he threw the gun out the window." Doc. 35 at 2. Based on the record, this Court determines that the initial statement by Allman that he had thrown the gun from the car was made voluntarily and was not made in

-4-

response to questioning. Therefore, there is no Miranda violation and the statements will be admitted.

The Fifth Amendment to the United States Constitution affords criminal suspects the right to be free from compulsory self-incrimination. Criminal suspects must have knowledge of their Fifth Amendment rights "before they can either intelligently exercise or waive these important privileges." United States v. Griffin, 922 F.2d 1343, 1356 (8th Cir. 1990); United States v. Running, 698 F. Supp. 2d 1186, 1191 (D.S.D. 2009). The United States Supreme Court held in Miranda that any time a person is taken into custody for questioning they must be advised of their Fifth Amendment rights in order "to counteract the 'inherently compelling pressures' of custodial interrogation." Arizona v. Roberson, 486 U.S. 675, 681 (1988) (quoting Miranda, 384 U.S. at 467.

The safeguards of Miranda "assure that [a suspect's] *right to choose* between speech and silence remains unfettered throughout the interrogation process." Connecticut v. Barrett, 479 U.S. 523, 528 (1987) (quoting Miranda, 384 U.S. at 469). The suspect has the right to "control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation." Michigan v. Mosley, 423 U.S. 96, 103-04 (1975).

Miranda "requires that a warning as to the availability of the privilege against self-incrimination and to the assistance of counsel be issued *prior to questioning* whenever a suspect is (1) interrogated (2) while in custody." Griffin, 922 F.2d at 1347; see also United States v. Head, 407 F.3d 925, 928 (8th Cir. 2005). There is no dispute here that Allman was not given the Miranda warnings before making the statement about having thrown the gun out the window. Nor is there any dispute that Allman was in custody at the time of the statement. The only issue

is whether there was interrogation because "[v]olunteered statements of any kind are not barred by the Fifth Amendment." Miranda, 384 U.S. at 478.

"Interrogation" is the "direct questioning [by a law enforcement officer] or any practice reasonably likely to evoke an incriminating response from a suspect." Griffin, 922 F.2d at 1347 (citing Rhode Island v. Innis, 446 U.S. 291, 301 (1980)). Allman contests Special Agent Kettell's version of events and asserts that Special Agent Kettel improperly questioned Allman about the gun before advising Allman of his Miranda rights. Doc. 30 at 2; Doc. 35 at 2-3. Although Allman contests Special Agent Kettell's description of events, Allman has produced no evidence to contest that Allman gave the statement without prior questioning.

Special Agent Kettell testified that he did not give Allman Miranda warnings upon arrest as he had no intention of questioning Allman at the time. T. 18. The facts at issue all happened in quick succession; according to Special Agent Kettell, Allman was handcuffed then immediately walked over to the car, at which point Allman stated he had thrown the gun out the window. T. 19. Special Agent Kettell testified repeatedly and consistently that he did not ask Allman about the gun before Allman's statement. T. 9; T. 19-21. Nor did other officers present at the scene ask Allman the location of the gun. T. 20.

Judge Moreno found the testimony of Special Agent Kettell to be credible and concluded that Allman's statement about throwing the gun out the window was "made spontaneously and without any interrogation" and was "volunteered and unsolicited." Doc. 34 at 4-5. "The magistrate's finding that the officer's testimony was believable is deserving of deference." United States v. Lockett, 393 F.3d 834, 837-38 (8th Cir. 2005). This Court, after reviewing the transcript of the suppression hearing, agrees with Judge Moreno that the testimony of Special

Agent Kettell was credible.

Allman argues it is "unbelievable" that he volunteered the statement without any interrogation, but then refused to disclose the location of the gun. Doc. 35 at 2. This Court does not intend to speculate why Allman, while at least somewhat intoxicated, volunteered that he had tossed the gun out a car window. Allman's mere argument as to the voluntariness of his statement being unbelievable does not justify suppressing the evidence. Thus, this Court adopts the recommendation that the statement was volunteered and unsolicited and therefore falls outside the purview of Miranda.

### B. Post-Miranda Statements

Allman objects to Judge Moreno's factual findings and legal conclusions that Allman voluntarily waived his rights in the post-Miranda statements made shortly after the arrest. Allman points to three factors to show that he did not voluntarily waive his rights: (1) the advisement of rights came immediately after the initial statement about the gun; (2) Allman was under the influence of alcohol; and (3) Allman had shortly before dropped to the ground in fear after the misfired shot by another officer.

The government has the burden to prove that a defendant's waiver of his Miranda rights was voluntary, knowing, and intelligent. Tague v. Louisiana, 444 U.S. 469, 470 (1980); North Carolina v. Butler, 441 U.S. 369, 372-73 (1979); Miranda, 384 U.S. at 475. "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Miranda, 384 U.S. at 475. However, the government "need prove waiver only by a preponderance of the

evidence." Colorado v. Connelly, 479 U.S. 157, 168 (1986).

A waiver of Miranda rights may be either express or implied. Berghuis v. Thompkins, 130 S. Ct. 2250, 2261 (2010). An implied waiver occurs when the suspect embarks on a course of conduct indicating, given the totality of circumstances, waiver. Berghuis at 2261-62. The government must show that the suspect was advised of his Miranda rights, understood those rights, and then chose to make an uncoerced statement. Id. Simply proving that a Miranda advisement was given and that a statement was later made is not sufficient. Id.

Whether Allman effectively waived his Miranda rights involves the following two inquiries:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

United States v. Jones, 23 F.3d 1307, 1313 (8th Cir.1994) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).

"Only if the 'totality of circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Id. (quoting Moran, 475 U.S. at 421). Examination of the totality of circumstances includes, but is not limited to, such considerations as the "background, experience, and conduct" of the defendant. Id. at 1313 (quoting United States v. Barahona, 990 F.2d 412, 418 (8th Cir.1993)).

Allman's first argument—that the statement came immediately after an initial un-Mirandized statement—does not justify suppression of his statements. Allman's first statement,

made before receiving a Miranda warning, was voluntary and unsolicited, and thus not in violation of Miranda. Therefore, the earlier voluntary statement does not impact analysis of the voluntariness or comprehension of Allman's subsequent waiver of his Miranda rights.

Allman's second argument is that he was under the influence of alcohol at the time he waived his Miranda rights. Allman thus contends that the waiver was not made with "full awareness." Jones, 23 F.3d at 1313. Alcohol use is a factor in determining whether a Miranda waiver was valid. However, "intoxication and fatigue do not automatically render a confession involuntary." United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008) (quoting United States v. Casal, 915 F.2d 1225, 1229 (8th Cir.1990)). The test is whether the mental impairments caused by alcohol "caused the defendant's will to be overborne." Id. (quoting Casal, 915 F.2d at 1229). It is enough that a suspect appear awake and coherent at the time of a Miranda waiver. Id. Allman was not acting confused or disoriented at the time of his waiver. He said he understood his rights and he spoke freely with Special Agent Kettell. T. 10. During this discussion Allman attempted to negotiate with Special Agent Kettell and ultimately declined to provide information about the gun's location. T. 11; T. 41. Allman, although intoxicated, was communicating and aware of his situation. Therefore, Allman had "full awareness" of his Miranda rights and the consequences of his decision to abandon his rights, despite his level of alcohol intoxication.

Allman's third argument is that the waiver was involuntary as Allman had shortly before been in fear because of the misfired shot. Agent Sedlmajer misfired his rifle inside his vehicle. T. 42-43. Allman heard this gunshot while another officer had a gun pointed at him and understandably dropped to the ground. T. 9. Although Allman understandably would be startled

and fearful upon hearing the gunshot, by the time Allman was placed in handcuffs, moved to a vehicle, and given his Miranda rights, the threat from the gun was gone. Special Agent Kettell assessed the situation and determined there was no additional threat; Allman points to no evidence that, at the time he was given the Miranda warning, and chose to be interviewed, he was subject to "intimidation, coercion, or deception." See Jones, 23 F.3d at 1313. Thus, this Court adopts the recommendation that Allman's Miranda waiver was made in a voluntary, knowing, and intelligent fashion, and is therefore valid.

### C. Search of the Vehicle

Allman objects to Judge Moreno's factual and legal conclusions that the search of the car was legal. Special Agent Kettell did not receive consent to search the car, nor did he have a warrant to do so. T. 22. Special Agent Kettell searched the car because he was concerned that there was still a firearm in the vehicle. T. 40. Allman argues that because he had informed Special Agent Kettle that the gun had been removed from the vehicle, there was no reason to search the car. Doc. 35 at 3. However, Allman has no standing to contest the search of the vehicle.

In order to have standing to contest the search of the car, Allman must "demonstrate that he personally has a reasonable expectation of privacy in the [car] because Fourth Amendment rights may not be asserted vicariously." United States v. Crippen, 627 F.3d 1056, 1063 (8th Cir. 2010) (citing United States v. Barragan, 379 F.3d 524, 529 (8th Cir. 2004)). Allman, in moving to suppress this evidence, "bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search." United States v. Muhammad, 58 F.3d 353, 355 (8th Cir.1995) (citing United States v. Kiser, 948 F.2d 418, 423 (8th Cir.1991), cert. denied, 503 U.S.

983, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992)); see also United States v. Salter, 358 F.3d 1080, 1084 n.2 (8th Cir. 2004). "As a mere passenger in a vehicle with no legitimate expectation of privacy," Allman cannot challenge the search of the vehicle. Crippen, 627 F.3d at 1063. Allman informed agents that he was not the driver of the vehicle. Ex. 4 at 24:55; Ex. 5 at 5:30. Allman also had no ownership interest in the vehicle. T. 28-29; T. 32-33; T. 36. Thus Allman has no standing and cannot contest the search of the vehicle.

### D. May 4, 2012 Statements

Allman also moved to suppress his May 4, 2012 statements on the grounds that they were the fruit of an illegal search and questioning that occurred on May 3, 2012, contending under Wong Sun that illegality flowing from May 3, 2012 events tainted, thereby rendering inadmissible, the afternoon May 4, 2012 statements. Wong Sun v. United States, 371 U.S. 471 (1963). The May 4, 2012 statements were made in custody during two interviews with Special Agents Breining and Kettell. Allman was properly advised of his Miranda rights at the start of each interview. Doc. 30-1; Doc. 30-2.

Allman's argument is unavailing. This Court already has determined that the search of the vehicle did not violate the Fourth Amendment, so the search was not a poisonous tree from which any poisonous fruit could fall. Hessman, 369 F.3d at 1023-24. Nor was the initial statement by Allman on May 3, 2012 in violation of the Fifth Amendment and Miranda, so the initial statement was not a poisonous tree from which any poisonous fruit could fall.

### IV. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant's Motion to Suppress (Doc. 27) is denied. It is further

ORDERED that Defendant's Objections (Doc. 35) to the Report and Recommendation are overruled. It is further

ORDERED that the Report and Recommendation (Doc. 34) is adopted.

Dated August  3 , 2012.

            BY THE COURT:

            */s/ Roberto A. Lange*
            ROBERTO A. LANGE
            UNITED STATES DISTRICT JUDGE